IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>BAMA OAKS RETIREMENT, LLC,<br><br>    Debtor. | CHAPTER 11<br><br>CASE NO. 20-61914-BEM |

**BOKF, N.A.'S MOTION TO DISMISS, FOR RELIEF FROM STAY, OR
TO APPOINT A CHAPTER 11 TRUSTEE**

Creditor BOKF, N.A. (d/b/a Bank of Oklahoma) ("BOKF") hereby moves this Court to, alternatively, dismiss this case, grant BOKF relief from the automatic stay, or appoint a Chapter 11 trustee. This constitutes a core proceeding, 28 U.S.C. § 157(b), over which this Court has subject matter jurisdiction, 28 U.S.C. § 1334.

In support of its request, BOKF states as follows:

### I.    Background

A.    The Debtor

Debtor Bama Oaks Retirement, LLC ("Debtor") owns a senior living community in Mobile, Alabama, known as "Gordon Oaks Senior Living Community" ("Gordon Oaks"). The community consists of an 88-unit independent living facility and a 108-unit assisted living facility which includes a 56-units designated for specialty (i.e., memory) care. The community shares a lot with a nursing home which is owned by a subsidiary of Gordon Jensen Health Care Association, Inc, a debtor in a related case pending before this Court (Case No. 20-61915). Debtor is managed by St. Simons Healthcare, LLC, a company wholly owned by Christopher Brogdon ("Brogdon"), who serves as principal of the Debtor. The Securities and Exchange Commission ("SEC") brought an action against Mr. Brogdon and his wife, Connie Brogdon. *See* Complaint, *S.E.C. v. Brogdon*, No. 15-cv- 8173, Doc. No. 1 (D.N.J. Nov. 20, 2015). Debtor is referenced in paragraph 1 of the SEC Complaint as one of the 43 entities through which Mr. Brogdon "conducted his fraud." *Id.*

9429659.5

at ¶ 1. On January 17, 2020, the United States District Court for the District of New Jersey entered judgment against the Brogdons in the amount of $47,742,882.49. *See* Final Judgment, *S.E.C. v. Brogdon*, No. 15-cv- 8173, Doc. No. 543 (D.N.J. Jan. 17, 2020).

      B.      The Bond Offerings

Debtor acquired Gordon Oaks with financing from two bond issuances, one in the amount of $11,650,000 and the other in the amount of $5,697,700. BOKF serves as the indenture trustee for those bond issuances and holds a first-lien security interest in the facilities. As of the filing of the petition, BOKF's claim was $13,390,019.93. The Debtor has not made a payment toward its indebtedness since May 1, 2017, and as of September 30, 2020, BOKF's claim is $20,823,621.53.

      C.      The Bankruptcy Case

Debtor filed Chapter 11 petition on February 1, 2020, after BOKF threatened to seek appointment of a receiver. On May 14, 2020, Debtor employed the firm of Marcus & Millichap to market Gordon Oaks. All indications are that process is stagnant, if it is truly proceeding at all. At a continued meeting of creditors held on July 27, 2020, the best Brogdon could say for Marcus & Millichap's efforts was that Mike Pardoll, a broker with Marcus & Millichap, was "calling people" about Gordon Oaks. Indeed, Brogdon testified that he thought it highly unlikely that any sale could go forward during the COVID-19 pandemic.

Despite Debtor's expressed doubts about any ability to sell Gordon Oaks, on August 28, 2020, Debtor filed a Chapter 11 Plan proposing to sell Gordon Oaks and pay off the debt to BOKF. Debtor's disclosure statement forthrightly declares any sale proceeds will only go to satisfy BOKF's debt. *See* Disclosure Statement, Doc. No. 92, at 2 ("[BOKF] holds a first priority security interest in Gordon Oaks…and will likely receive all post-closing proceeds from the sale of Gordon Oaks. General unsecured creditors…will likely receive no distribution on their allowed claims."). A hearing on approval of the disclosure statement is scheduled for October 6, 2020.

D.  Debtor's Current Condition

Debtor is not generating sufficient revenue to continue operations. Indeed, Debtor has admitted it is being kept afloat by loans from St. Simons, the management company. In spite of these revenue issues, Debtor has paid 8% of its revenues in legal, accounting and management fees, a figure that is 3% over the market rate. And it is paying these fees without paying BOKF anything.

In addition to this misappropriation, Debtor's business is simply poor. A comparison of Debtor's rates with those of its competitors shows Debtor charges significantly lower rents, including 132% less for independent living. Nevertheless, Debtor's occupancy is well below sustainable levels—15% occupancy for the assisted living facility, 28% occupancy for the independent living facility, and only 50% occupancy for the specialty care facility. These numbers are based on the rent roll from February 2020, but Brogdon's testimony at the continued 341 meeting in July was that Debtor netted only *one* additional tenant in that five month period. Debtor does not appear to be doing much to increase census either. For instance, a simple search reveals Debtor has not listed Gordon Oaks on the popular senior-living website "a Place for Mom."

Finally, BOKF recently had appraisals performed on the Gordon Oaks facilities. Per those appraisals, Gordon Oaks currently has a value significantly below the amount owed to BOKF.

II.  Argument

By Debtor's own admission, Debtor filed this case to stop BOKF from enforcing its legitimate rights to Gordon Oaks. Eight months have passed since Debtor filed its petition, and there has been no material improvement in Debtor's position and no realistic proposal that would justify continuing this case. Debtor has filed this case in bad faith, has not made a single payment toward its debt to BOKF, has been paying exorbitant administrative fees while experiencing negative cash flow, and has proposed a reorganization plan centered on selling Gordon Oaks

despite having no belief such a sale is possible in the current climate. These facts mandate this case be dismissed, BOKF be given relief from the automatic stay, or, at the very least, a Chapter 11 trustee be appointed to protect BOKF's interests.

    A.    <u>Motion to Dismiss</u>

Under 11 U.S.C. § 1112(b), the court *shall* dismiss a chapter 11 case if it finds cause exists and that dismissal "is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). It is the movant's burden to show cause to dismiss. *In re Roan Valley, LLC*, 09-13229-WHD, 2009 WL 6498188, at *2 (Bankr. N.D. Ga. Nov. 25, 2009). Once the movant has done so, the debtor "must show 'unusual circumstances' that justify the case continuing in Chapter 11, <u>and</u> show the existence of the three elements enumerated by § 1112(b)(2)." *In re Asanda Air II LLC*, 600 B.R. 714, 723 (Bankr. N.D. Ga. 2019). These elements are that "there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1112(e) and 1129(e) of this title, or…within a reasonable period of time; and…the grounds for converting or dismissing the case include an act or omission of the debtor" that is justified and which can be cured in a reasonable time. 11 U.S.C. § 1112(b)(2); *Asanda Air II LLC*, 600 B.R. at 723.

If the debtor carries that burden, "the movant must then show unusual circumstances that justify dismissal…of the case, despite the debtor's proffer of evidence." *In re Asanda Air II LLC*, 600 B.R. at 723. The burden of proof is a preponderance of the evidence. *See id.* at 720.

"Cause" to dismiss a Chapter 11 case eludes precise definition. *See In re Brooks*, 488 B.R. 483, 489 (Bankr. N.D. Ga. 2013) ("A precise definition of 'cause' is slippery and elusive."). The Code enumerates 16 grounds for dismissing a case. *See* 11 U.S.C. § 1112(b)(4). But that list is not exclusive. *In re Oakley Grading & Pipeline, LLC*, No. 18-10743-WHD, 2019 WL 1270805, at *3 (Bankr. N.D. Ga. Mar. 15, 2019). Relevant to this motion, bad faith can justify dismissal, even though it is not listed as a grounds in § 1112(b)(4). *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d

1393, 1394 (11th Cir. 1988). Ultimately, "determination of [cause] is at the discretion of the Court." *Id.*; *accord In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) ("[T]he determination of cause under § 1112(b) is 'subject to judicial discretion under the circumstances of each case.'").

Three grounds for finding cause to dismiss this case are pertinent here: (1) there is substantial or continuing loss to or diminution to the estate and no reasonable likelihood of rehabilitation; (2) Debtor has engaged in gross mismanagement of the estate; and (3) Debtor has filed and is prosecuting this case in bad faith.

> 1. *Substantial or Continuing Loss to the Estate and No Reasonable Likelihood of Rehabilitation*

Section 1112(b)(4)(A) provides that "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" constitutes "cause" to dismiss a case. The burden of showing cause under (b)(4)(A) "is often met by showing that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the entry of the order for relief." *In re Oakley Grading & Pipeline, LLC*, 2019 WL 1270805, at *4.

Here, Debtor's operations, which began this case in the negative, have remained in the negative and are not improving. Occupancy numbers are abysmal. From February to July, the census only increased by one resident. These low numbers persist despite Debtor charging significantly lower rates than its competitors.

Furthermore, revenues cannot keep up with expenses. Month after month, St. Simons has had to cover Debtor's operational shortfall. And all the while, Debtor has paid out significantly above-market administrative fees. There are also indications are Debtor is not taking sufficient steps to improve census, with Gordon Oaks not even being listed on a widely used senior-care information website. The poor state of Debtor's business has caused substantial loss to the estate. This diminution should not be allowed to continue.

There is also no likelihood of a successful rehabilitation. Rehabilitation "means 'to put back in good condition; re-establish on a firm, sound basis.'" *In re Roan Valley*, 2009 WL 6498188, at *3. Here, there is no realistic prospect of re-establishing Debtor's business "on a firm, sound basis" in the context of this case. The best Debtor can propose is liquidation, but that is not rehabilitation. And even if it were, such a "rehabilitation" is unlikely in the current climate. The Debtor itself admits a sale is unlikely as the COVID-19 pandemic continues. *See id.* (finding cause after considering the "current macroeconomic climate").

This attitude toward sale is consistent with the Debtor's history. As part of the SEC litigation against the Brogdons, the Knollwood Facility was subject to a Plan of Liquidation for at least four and a half years. Through all that time, in a healthy economy, Debtor was unable to sell the facility despite receiving several offers. Debtor is not committed to selling this property, and creditors, most especially BOKF, should not be prevented from enforcing their legitimate rights waiting on Debtor to achieve an outcome even Debtor does not think possible. *See id.* at *2 ("Congress wanted to 'preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditor's expense when there is no hope of rehabilitation.'").

In a related vein, the impracticability of Debtor's conducting a profitable sale of Gordon Oaks is itself a basis for "cause" under the Code. *See* 11 U.S.C. § 1112(b)(4)(M). Under § 1112(b)(4)(M), cause "may…be established…where the record shows that the debtor cannot effectuate a plan of reorganization." *In re Brooks*, 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013). In determining whether a debtor is capable of effectuating a plan, a court may look to "the practical considerations of the case, and whether the Court thinks that a debtor would be able to submit a plan, achieve confirmation and carry it out." *Id.* at 491.

Here, Debtor has given no indication it is capable of achieving confirmation and consummation of a reorganization plan. Debtor proposes to sell the property, but itself admits that

a sale is unlikely. Debtor is not committed to selling this property. As it is, BOKF, whose interest predominates, is being made to watch assets that should be used to pay off the debt to BOKF dwindle away while Debtor puts on a façade of selling Gordon Oaks. That is not a rehabilitation in progress. This case should be dismissed.

### 2. *Gross Mismanagement*

Debtor's gross mismanagement of the estate constitutes further cause to dismiss this case. *See* 11 U.S.C. § 1112(b)(4)(B). Rather than operate in the best interests of creditors and the estate, Debtor has instead overseen the depletion of estate assets and has taken an unacceptable approach to selling Gordon Oaks. Debtor's situation is deteriorating. Cash flow is not sufficient to meet expenses, and Debtor has been unable to meaningfully increase census. Furthermore, Debtor's expenses are excessively high, with administrative costs completely out of step with market practices. All the while, Debtor is also allegedly trying to market the property, but those efforts are lackadaisical and half-hearted. Debtor does not believe the property can be sold and does not even know for certain what efforts are being undertaken to sell the property. Debtor was unable to sell this facility despite having years to do so in vibrant economic times during the SEC litigation and the motivation to avoid the financial ruin which will ultimately come with the SEC Judgment. There is no reason to believe Debtor can do so now, in the midst of a global pandemic that has taken a significant toll. Essentially, Debtor is running the estate into the ground, and its laissez-faire approach to selling the property is particularly inappropriate in light of Debtor's significant business issues. Debtor has failed in its responsibility to act in the best interests of the estate, and this case should be dismissed. *See In re Moultrie*, 586 B.R. 498, 504 (Bankr. N.D. Ga. 2018) (noting "[a] DIP is vested with significant powers which come with certain responsibilities and duties").

### 3. *Bad Faith*

A further ground for dismissing this case, and one that informs and ties together the others, is Debtor's bad faith. Though "bad faith" is not a ground for dismissal enumerated in the statute, it is an accepted reason for dismissing a case. *See In re Asanda Air II LLC*, 600 B.R. at 721. "[T]here is no particular test for determining whether a debtor has filed a petition in bad faith." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394. Rather, it "is a question of fact and [the determination] must be made on a case-by case basis." *In re Asanda Air II LLC*, 600 B.R. at 721. To guide that process, a court "may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394. Additionally, "whether the reorganization essentially involves the resolution of a two party dispute[ ] and whether the debtor filed the petition solely for the creation of the automatic stay" are also factors to consider. *In re Asanda Air II LLC*, 600 B.R. at 721.

This case reeks of bad faith. From its inception, it has been a scheme designed to prevent BOKF from exercising its legitimate rights in Gordon Oaks. When BOKF threatened to impose a receiver over the facilities due to Debtor's failure to service its debt to BOKF, Debtor filed this petition. This case started as a two-party dispute and remains a two-party dispute. There is no reason for it to remain in this Court.

Debtor had years to sell Gordon Oaks during the SEC litigation and failed. Nevertheless, after months of little activity, Debtor has proposed a liquidation plan. Setting aside the impracticability of Debtor actually being able to sell Gordon Oaks during a pandemic, Debtor's plan to sell Gordon Oaks, by its own admission, will only produce proceeds to pay BOKF's claim (assuming a sale occurs at all). Debtor has no intention or means of satisfying any debts owed to its general unsecured creditors. Debtor is using this case solely as leverage against BOKF, that is,

8
9429659.5

to delay BOKF from exercising its lawful rights in Gordon Oaks while paying excessive fees to a Brogdon-controlled entity. That is an abuse of the judicial process and the reorganization provisions. The case should be dismissed. *Cf. In re Encore Prop. Mgmt. of Western N.Y., LLC*, 585 B.R. 22, 30-31 (Bankr. W.D.N.Y. 2018) ("As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.").

        4.       *No Unusual Circumstances*

Once BOKF establishes cause exists, the burden shifts to Debtor to show "unusual circumstances" suggesting dismissal or conversion is not appropriate and that "there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1112(e) and 1129(e) of this title, or…within a reasonable period of time; and…the grounds for converting or dismissing the case include an act or omission of the debtor" that is justified and which can be cured in a reasonable time. 11 U.S.C. § 1112(b)(2); *Asanda Air II LLC*, 600 B.R. at 723.

No unusual circumstances militate against dismissal or conversion here, and Debtor cannot show a reasonable likelihood that a plan will be confirmed or that it can cure any of its malfeasant acts within a reasonable time. This case should be dismissed.

        5.       *Dismissal over Conversion*

This case should be dismissed rather than converted. Once cause has been shown and the debtor is unable to satisfy its burden, it lies in the discretion of the court whether to dismiss the case or convert it to a case under Chapter 7, "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1); *In re Brooks*, 488 B.R. at 492 ("There is no 'bright-line test' for

determining whether dismissal or conversion is more appropriate, and the underlying objective is to do that which is in the best interest of both the creditors and the bankruptcy estate.").[1]

Dismissal is the appropriate course here. This case, which was filed in bad faith, has been pending for over six months. Per Debtor's recently filed plan, the best use of the estate's assets is to liquidate them, but, as has been shown, such liquidation will result in a payment solely to BOKF. Accordingly, a Chapter 7 trustee would be administering an estate, and thus accruing fees, solely for the benefit of BOKF. That is not an efficient use of resources. *See In re MacElvain*, 160 B.R. 672, 675 (Bankr. M.D. Ala. 1993) (dismissing rather than converting a case where "the secured and priority claims exceed the value of the property of the estate" and there would be no "distribution to general unsecured creditors in a chapter 7 case"). There is no need to for the estate to incur administrative costs to resolve a dispute between BOKF and Debtor. This case should be dismissed and all parties allowed to enforce their rights in the manner they choose.

B.  <u>Motion for Relief from the Automatic Stay</u>

If the Court concludes dismissal is not appropriate, BOKF requests in the alternative that it be granted relief from the automatic stay to enforce its legitimate rights in the property. Relevant here, a court will grant relief from the automatic stay "(1) for cause, including the lack of adequate protection of an interest in property"; or "(2) with respect to a stay of an act against property…, if—(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d). Both grounds for relief are satisfied here.

1.  *Relief for Cause*

---

[1] The court may also appoint a Chapter 11 trustee if the court concludes that "is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). BOKF addresses that possibility in section II.C, below.

Cause exists to grant BOKF relief from the automatic stay because its interest is not adequately protected and because Debtor has acted in bad faith.

First, BOKF is not adequately protected because its interest is woefully under-secured. Gordon Oaks has an appraised value significantly below BOKF's claim, which, as of September 30, 2020, is $20,823,621.53. Debtor has not made any post-petition payments, and BOKF's interest is not adequately protected.

Second, Debtor has acted in bad faith in filing this petition. The test for whether a debtor has acted in bad faith for purposes of obtaining relief from the stay is the same as that for finding cause to dismiss under § 1112(b). *In re Club Tower L.P.*, 138 B.R. 307, 310 (Bankr. N.D. Ga. 1991). Therefore, "[a] bad faith filing of a bankruptcy petition constitutes 'cause' justifying relief from the automatic stay." *Id.* As explained above, Debtor filed this petition solely to forestall BOKF from pursuing, as it was entitled to do, the appointment of a receiver as a result of Debtor's complete failure to liquidate the property during the multi-year SEC action or to make payments to BOKF. Debtor's bad faith has only continued to reveal itself, as Debtor's proposed plan is a half-hearted gesture. Debtor is not committed to seeing this case to a reasonable conclusion. BOKF should be granted relief from the stay to pursue any and all rights it may have against Debtor.

2.    *Debtor Has No Equity and No Prospect of Reorganization*

As a further basis for relief from the automatic stay, Debtor has no equity in Gordon Oaks, and that property is not necessary for an effective reorganization. It is BOKF's burden to show the lack of equity, but it is Debtor's burden to show the property *is* necessary to a reorganization. *See* 11 U.S.C. § 362(g).

Debtor has no equity in this property. Debtor itself admitted that a sale of the property would likely result in all the proceeds going to BOKF to pay BOKF's claim. BOKF's appraisal

fully supports that conclusion. Gordon Oaks is worth significantly less than the amount owed to BOKF. Debtor is severely underwater on its obligations to BOKF and has no equity in the property.

Gordon Oaks is not necessary to an effective reorganization. Debtor's proposal to liquidate Gordon Oaks does not automatically mean Debtor has no prospect of a "reorganization." *See In re Goulding Place Developers, Inc.*, 99 B.R. 493, 499 (Bankr. N.D. Ga. 1989). But here, Debtor's plan proposes to liquidate this property and pay *all* the proceeds of the sale to BOKF. That cannot be called a plan of reorganization. It is instead a bald-faced attempt to frustrate BOKF's enforcement of BOKF's legitimate rights. Debtor cannot "forestall foreclosure so that the property can be sold on the market." *In re Global Ship Sys., LLC*, 391 B.R. 193, 209 (Bankr. S.D. Ga. 2007).

Gordon Oaks is necessary to paying BOKF, not to an effective a reorganization. As such, BOKF is entitled to decide for itself what is in its best interests concerning its interest in the property. *Cf. In re Lake Ridge Assocs.*, 169 B.R. 576, 578-79 (E.D. Va. 1994) ("While Lake Ridge maintains that Nationsbank would benefit from the implementation of its plan, the fact that Nationsbank so strongly opposes the plan suggests otherwise."). The court should grant BOKF relief from the stay to enforce its legitimate rights in property in which it has the sole meaningful interest.

C. <u>Motion to Appoint a Chapter 11 Trustee</u>

As a final alternative, BOKF requests the appointment of a Chapter 11 trustee. The Code specifically contemplates appointment of a trustee as an alternative to dismissal or conversion once cause has been shown. *See* 11 U.S.C. § 1112(b)(1). If this case is allowed to proceed, Debtor's gross mismanagement of the estate mandates appointment of a trustee to prosecute this case properly.

Section 1104(a) outlines the criteria for when appointment of a trustee is appropriate. The Code requires a trustee be appointed "(1) for cause, including fraud, dishonesty, incompetence, or

12
9429659.5

gross mismanagement of the affairs of the debtor by current management…; or (2) if such appointment is in the best interests of creditors, any equity security holders, and other interests of the estate." *Id.* The ability to appoint a trustee "is critical for the [c]ourt to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re Intercat, Inc.*, 247 B.R. 911, 920 (S.D. Ga. 2000).

Whether cause exists to appoint a trustee "is a fact sensitive [question] and must be analyzed on a case-by-case basis." *In re PHDC, LLC*, No. 03-93397, 2004 WL 5846712, at *2 (Bankr. N.D. Ga. 2004). A court may consider a number of factors, including:

> 1) Materiality of the misconduct; 2) Evenhandedness or lack of same in dealings with insiders or affiliated entities *vis-à-vis* other creditors or customers; 3) The existence of pre-petition voidable preferences or fraudulent transfers; 4) Unwillingness or inability of management to pursue estate causes of action; 5) Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; 6) Self-dealing by management or waste or squandering of corporate assets.

*Id.* at *2-3. "A history of transactions between the debtor and related companies can also serve as cause for the appointment of a trustee." *Id.* at *3; *accord In re Okla. Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988) ("There are many cases holding that a history of transactions with companies affiliated with the debtor company is sufficient cause for the appointment of a trustee where the best interests of the creditors require."). Mismanagement can also serve as cause. *In re La Sherene, Inc.*, 3 B.R. 169, 175 (Bankr. N.D. Ga. 1980). Finally, the simple determination the benefits of appointment of a trustee outweigh the costs is also sufficient. *See In re PHDC, LLC*, 2004 WL 5846712, at *3.

Here, barring the Court's dismissing this case or granting BOKF relief from the stay, appointment of a trustee is justified by cause and is in the best interests of creditors and the estate. Debtor's manager, Brogdon, is causing Debtor to pay excessive management fees to a company Brogdon controls. Additionally, Brogdon is aloof from the marketing process for the facilities,

which, given Debtor's recently proposed plan, is all Debtor intends to do with these facilities in this case. As explained above, Debtor is using this case to prevent BOKF from exercising its rights while the value of Gordon Oaks dwindles. This case was filed in bad faith and is being prosecuted in bad faith. There is no realistic possibility of an effective reorganization while Brogdon is at the helm. If the Court finds that dismissal or relief from the stay are inappropriate, BOKF requests the appointment of a Chapter 11 trustee to provide "a fiduciary protective shield" against Debtor's further mismanagement of the estate. *See In re La Sherene, Inc.*, 3 B.R. at 176 ("[T]he interests of creditors, the interest of the estate, demands a security blanket, a fiduciary protective shield, from the possibility of continued financial excesses by current promotional and sales oriented management.").

### III.    Conclusion

The abysmal condition of the estate, Debtor's gross mismanagement, and the Debtor's patent bad faith compel the conclusion this case must be dismissed. Alternatively, BOKF should be granted relief from the stay to enforce its legitimate rights in the property in which Debtor has no equity and which is completely unnecessary for Debtor's "reorganization." As a final alternative, a Chapter 11 trustee should be appointed to serve as an independent fiduciary to salvage whatever possibility there is that this case might move forward in the best interests of creditors and the estate.

[*Remainder of page left blank – please find signature on following page*]

Respectfully submitted, this the 2nd day of October, 2020.

/s/ Walter E. Jones
Walter E. Jones
Georgia Bar Number 163287
Patrick Silloway
Georgia Bar Number 971966

**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Boulevard, N.W.
Suite 700
Atlanta, GA 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656
wjones@balch.com
psilloway@balch.com

James A. Higgins
Oklahoma Bar Number 18570
*Pro Hac Vice*
**FREDERIC DORWARD, LAWYERS PLLC**
Old City Hall
124 East Fourth Street
Tulsa, OK 74103-5010
Telephone: (918) 583-9922
Facsimile: (918) 583-6049
jhiggins@fdlaw.com

Attorney for BOKF, N.A., in its capacity as indenture trustee for (i) $5,110,000 The Medical Clinic Board of the City of Mobile (Second) First Mortgage Healthcare Facility Revenue Bonds (Bama Oaks Retirement, LLC Project) Series 2012A, (ii) $630,000 The Medical Clinic Board of the City of Mobile (Second) First Mortgage Healthcare Facility Revenue Bonds (Bama Oaks Retirement, LLC Project) Taxable Series 2012B, (iii) $10,850,000 The Medical Clinic Board of the City of Mobile (Second) First Mortgage Healthcare Facility Revenue Bonds (Bama Oaks Retirement, LLC Project II) Series 2012A, and (iv) $850,000 The Medical Clinic Board of the City of Mobile (Second) First Mortgage Healthcare Facility Revenue Bonds (Bama Oaks Retirement, LLC Project II) Taxable Series 2012B

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 2, 2020, I electronically filed the foregoing BOKF, N.A.'s Motion to Dismiss, for Relief From Stay, or to Appoint a Chapter 11 Trustee with the Clerk of the Court by using the Court's CM/ECF system, which will serve a notice to all counsel of record by placing a copy of the same in the United States mail, postage prepaid to the attached certified matrix:

                    */s/ Walter E. Jones*
                    Walter E. Jones
                    Georgia Bar Number 163287